No. 795

First Circuit

GRANDMOUGIN v. GREEN

(June 16, 1931. Opinion and Decree.)

E. L. Stewart, of DeRidder, attorney for plaintiff, appellee.

Ferguson & Newman, of Leesville, attorneys for defendant, appellant.

## ON MOTION TO DISMISS

LeBLANC, J. The lower court granted an order of appeal to the appellant for both the suspensive and devolutive appeals, fixing the bond for a suspensive appeal in an amount according to law, and for the devolutive appeal, in the sum of $100.

The order was signed on January 12, 1931, and on January 28, 1931, the appellant furnished an appeal bond in the sum of $100, for what is referred to in the bond itself as a suspensive appeal.

The motion to dismiss is based on the ground, first, that the bond was furnished more than ten days after the signing of the order, and consequently too late for a suspensive appeal, and, secondly, that the amount of bond furnished is too small for a suspensive appeal.

Whenever a motion to dismiss an appeal is presented, there is always to be considered, first, the regard with which the law favors an appeal. It has been directly held in the case of Mestier v. Chevalier Pavement Co., 103 La. 562, 32 So. 520, that, where the appellant furnishes an appeal bond for the amount fixed by the court, the appeal will be maintained as devolutive, even though the bond be too small for a suspensive appeal.

Here it is true that in the bond itself the appeal is designated as suspensive, but we do not think that, because of such an erroneous declaration when the bond seems to be valid in every other respect, and the amount is sufficient to support a devolutive appeal, the appellant should be denied his right of appeal with which, as already stated, the law favors him.

The motion is therefore denied.

## ON THE MERITS

The issue in the case grows out of a misunderstanding between the plaintiff and the defendant as to the real meaning and intention of a verbal contract between them relative to the cutting, hauling, and sawing into lumber of certain timber belonging to the defendant by the plaintiff.

Plaintiff alleges that under the contract he was to cut, haul, and saw into lumber, for the defendant from his land in Vernon parish, certain logs, and do all the work in connection therewith, for the price of $15 per thousand feet of lumber thus sawed, and that the contract also contemplated that he was to make cross-ties which would belong to him upon paying defendant a stumpage value for the cross-tie timber of 15 cents for No. 2 ties and 5 cents for No. 3 ties. He claims that, after having given defendant credit for all the cross-ties he received, there is still due him the sum of $160.60, for which amount he prays for judgment. Claiming the privilege which he avers the law accords him on the lumber manufactured by him, he obtained an order of provisional seizure under which the sheriff holds approximately 15,145 feet of lumber.

The defendant admits the general nature of the agreement for the sawing of the logs into lumber, and that the price fixed between them was $15 per thousand feet, but he contends that the cross-ties, at the prices stated in the petition, were to pay for the cutting of the timber and the sawing of the logs into lumber. In other

words, the agreement was that he (defendant) would not have to put out any money, the plaintiff obtaining his whole payment out of the cross-ties he was to receive.

It appears from the evidence that the defendant relies equally as much on the other defense he makes that the lumber was not properly manufactured and is not marketable, and that the plaintiff did not cut the timber clean, leaving logs in the woods, thus causing defendant damage in the sum of $100. He also claims that the plaintiff owes him the sum of $18.72 for money advanced to laborers, and demands the sum of $50 as attorney's fees for obtaining the dissolution of the writ of provisional seizure. His full demand which he presents in reconvention is for the sum of $168.72.

The parties were alone when the contract was entered into, and, as they differ so widely with regard to the very important part regarding the consideration plaintiff was to receive, it is necessary to look to the surrounding facts and circumstances which may favor one side or the other in order to reach a definite conclusion.

The district judge evidently was of the opinion that the circumstances which presented themselves corroborated the testimony of the plaintiff as he rendered judgment in his favor for the full amount of his claim. The defendant has made no appearance before this court, and that alone, as is usually held, creates a strong presumption in favor of the correctness of the judgment.

The testimony discloses that the plaintiff owned a small portable sawmill, which, as we understand, was more of a cross-tie mill than one to manufacture lumber with. It was operated by a Fordson tractor en-

gine. He was cutting and sawing logs into lumber for one of the defendant's neighbors, Mr. John Lance, and it was on seeing plaintiff do this work that the defendant asked him to saw some of his timber, and this resulted in the agreement that was entered into between them. The defendant obviously then was aware of the capacity of the mill, and could judge for himself as to the quality and grade of the lumber manufactured by it. Mr. Lance testifies that the defendant's lumber was manufactured in just about the same manner as his was. Besides, the defendant was the one who superintended the cutting of the logs, designating what length they were to be cut, etc., and he himself hauled the lumber away from the mill after it had been sawed. Certainly he must have known of its quality, grade, and dimensions, and yet he never complained about it at all to the plaintiff. It is shown, moreover, that it was sawed in the grades and dimensions such as small mills of its kind are capable of turning out, and that the man engaged by the plaintiff as sawyer was competent. We believe, with such evidence before us, that the defense that the logs were not properly manufactured into lumber is not borne out by the record and cannot be sustained.

We are of the opinion that defendant's other contention that the agreement of plaintiff was that he was to receive his payment out of the cross-ties he was to make is equally refuted by the facts in the case.

In connection with this defense, we again refer to the fact that it was the defendant who directed the cutting of the logs in the woods. To make cross-ties, the logs would have to be cut in different lengths than those used to manufacture into lumber, and yet his instructions as to the lengths in which the logs had to be

cut indicated that most of the timber was to be sawed into lumber and not cross-ties. Besides, one of defendant's own witnesses testifies that on one occasion defendant told him that he feared plaintiff would cut more lumber than he did ties, and remarked further: "If he does I'm up against it, I can't pay for it." In view of the fact that he directed the cutting of the timber, and was therefore in a position to have the plaintiff saw either lumber or cross-ties as he wanted to, it is reasonable to assume that the fear he said he had was ungrounded, as he could have ordered the cutting of sufficient timber to make enough cross-ties with which plaintiff would have been paid in full. Plaintiff testifies that he would have preferred to manufacture the cross-ties, as that would have been more profitable to him.

Finally, on this defense, the evidence reveals that, when plaintiff made a demand for his payment of $15 per thousand feet for the manufactured lumber, the defendant did not raise any question about the contract, merely saying he could not pay it. He offered some form of settlement to the plaintiff, which involved turning over some property to him at a certain price from which the amount claimed would have been deducted. Had the defendant been correct in his understanding of the agreement, it strikes us he certainly would have protested at that time and not made the offer of settlement which he did.

The claim in reconvention which the defendant makes for the trees he alleges plaintiff left in the woods is not supported by the testimony. The trees, numbering 85, are all standing just as they were, and have not depreciated in value to any amount which we are able to determine.

The other demands in reconvention for money advanced to labor are conceded by plaintiff, but do not seem to change the result as far as the amount he demands is concerned. He seems to have made an error in calculation in his petition in allowing credits of $74.47. We gather from the figures as we view them that the items of advances were included in these credits.

We are unable to detect any error in the judgment of the lower court which allowed the plaintiff the amount of his claim in full, and it is therefore affirmed.